SANGER v. LUKENS, Secretary of State of Idaho.

District Court, D. Idaho, S. D. December 20, 1927.

No. 1338.

1. Highways 165—State may regulate use of highways, and may exclude certain kinds of traffic, or require fees for use.

Highways are established for the use and convenience of the public, and the state has the power through its Legislature to impose any regulations on their use that might conceivably promote the public interest, and to exclude traffic of certain kinds, or make use of such traffic conditioned on the payment of certain fees.

2. Commerce 10—In absence of national legislation, state may regulate use of highways, and impose license fees on motor vehicles moving in intrastate or interstate commerce.

In the absence of national legislation on the subject, a state may rightfully prescribe uniform regulations necessary for public safety, and impose a graduated license fee on motor vehicles moving in intrastate or interstate commerce on its highways.

3. Carriers 3—Individual hauling commodities for public generally under special contracts held "transportation company," within Idaho statute (Laws Idaho 1927, c. 237).

Regardless of his status as private or common carrier, individual engaged in business of hauling commodities for public generally, on such terms and prices as are specially agreed on, held an "auto transportation company," within Laws Idaho 1927, c. 237, requiring persons engaged in auto transportation business to file sworn statement, showing certain information, and pay certain fees, to be placed in state highway fund.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Transportation Company.]

4. Carriers 2—Constitutional law 235—Eminent domain 2(6)—Statute regulating use of highways by transportation companies held not unconstitutional, as taking property without compensation, or denying equal protection of law (Laws Idaho 1927, c. 237; Const. U. S. Amend. 14, § 1).

As respects individual engaged in business of hauling commodities for public generally by motor vehicles under special contracts, Laws Idaho 1927, c. 237, regulating business of "auto transportation companies," and requiring payment of fees, held not violative of Const. U. S. Amend. 14, § 1, as against contention that it constituted an attempt by legislative fiat to convert property used exclusively in business of private carrier into that of a public utility, as constituting taking private property without compensation, and as denying equal protection of the law.

5. Carriers 2, 4—Constitutional law 241, 297—Individual transporting commodities for public held "common carrier," though he insisted on private contracts with shippers, and state regulation did not violate due process or equal protection clause (Const. U. S. Amend. 14, § 1).

Individual holding himself out to the public as ready to transport commodities by motor vehicles on highways for compensation held a "common carrier," and could not escape liability as such by insisting on private contracts with shippers, and state, in regulating such business, did not violate either the due process or equal protection clause of Const. U. S. Amend. 14, § 1.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Common Carrier.]

**6. Carriers ⚖️4—"Common carrier" is one regularly offering to transport persons or commodities for any one choosing to employ him and pay charges.**

A "common carrier" is one who, by virtue of his calling and as a regular business, undertakes to transport persons or commodities from place to place, offering his services to such as may choose to employ him and pay his charges.

**7. Carriers ⚖️3—"Private carrier" is one undertaking to deliver goods in particular case for hire.**

A "private carrier" is one who, without being engaged in the business of carrying as a public employment, undertakes to deliver goods in a particular case for hire or reward.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Private Carrier.]

**8. Carriers ⚖️2—State constitutional provisions relating to railroads held inapplicable to carrier by motor vehicles (Const. Idaho, art. 11, §§ 5, 6).**

Const. Idaho, art. 11, §§ 5, 6, relating to corporations organized to construct railroads, *held* inapplicable to one engaged in business of transporting commodities on highways by motor vehicles.

**9. Carriers ⚖️8—State statute, regulating auto transportation business and imposing fee, held not to impose "tolls," in violation of federal aid statute (Laws Idaho 1927, c. 237).**

Laws Idaho 1927, c. 237, requiring persons engaged in auto transportation business to file certain statement, to procure liability and property damage insurance, and pay certain fees in amounts rated according to capacity of the vehicle to be used for maintenance of state highways, *held* not violative of act of Congress relating to federal appropriations for constructing of highways, and providing that highways constructed thereunder shall be free from "tolls."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Toll.]

In Equity. Suit by J. C. Sanger, trading and doing business under the name and style of Sanger Service, against Fred E. Lukens, Secretary of State and Commissioner of Law Enforcement for the State of Idaho. On defendant's motion to dismiss. Motion sustained.

Turner K. Hackman, of Twin Falls, Idaho, for plaintiff.

Frank L. Stephan, Atty. Gen., and Leon M. Fisk and H. O. McDougall, Asst. Attys. Gen., for defendant.

CAVANAH, District Judge. The plaintiff is engaged in the business of conducting a general storage, repair, and hiring of automobiles and auto trucks, with drivers, for the purpose of hauling commodities for others upon such terms and prices as each individual contract may require, and agreed upon, within and without the state of Idaho. In the conduct of his business, which is at Twin Falls, Idaho, he is the owner of and operates upon the highways six auto trucks, each with a rated capacity of 2½ tons, and of a value exceeding $3,000. A large number of other persons in the state are similarly engaged in hiring out auto trucks. At the 1927 session of the Legislature, an act was adopted (Laws 1927, c. 237) requiring each person or co-partnership engaged in the auto transportation business to file a sworn statement with the commissioner of law enforcement, showing the name under which such person or company was transacting business, a list of all motor vehicle equipment used in the conduct of the business of transporting persons or property, a schedule of operations, together with the distance of routes, procure liability and property damage insurance, and to pay certain fees in amounts rated according to the capacity of the motor vehicle, which are placed in the state highway fund and used for the maintenance of state highways. The action is brought to enjoin the enforcement of this law, and a provision of the act of 1925 of the Legislature (Laws 1925, c. 197, § 7) making it an offense for a violation thereof.

Plaintiff's position is that these provisions of the state law are unconstitutional and void under section 1 of the Fourteenth Amendment to the Constitution of the United States, in that it is an attempt by legislative fiat to convert property used exclusively by plaintiff in his automobile truck business from that of a private carrier into that of a public utility, and is taking private property and destroying his business without compensation, and denying him the equal protection of law in violation of said provision of the Constitution.

The defendant challenges the contention of plaintiff by a motion to dismiss. Inasmuch as it is conceded that the Legislature of the state has power to regulate the use of public highways by motor vehicles for commercial purposes, and can rightfully prescribe uniform regulations necessary for public safety, the only questions submitted are: (a) The validity of the act, and is the plaintiff an automobile transportation company, as defined by it? (b) Is the plaintiff, under the facts disclosed by the bill, using the public highways of the state as a common carrier for business in transporting property in auto trucks for hire? (c) Does the act of Congress relating to the appropriation of funds for the construction of highways, in providing that such highways shall be free from "tolls," deprive the state of the power

of enforcing regulations in the use thereof?
[1-4] Turning to the Idaho law, we find that the act provides that any person, copartnership, corporation, or association, who owns, operates, or manages any motor propelled vehicle for the transportation of persons or property for compensation over any public highway in the state, shall be an auto transportation company, and are required to comply with the provisions thereof. Highways are established for the use and convenience of the public, and the state has the power, through its Legislature, to regulate the use thereof, and may impose any regulation upon their use that might conceivably promote the public interest. It may exclude traffic of certain kinds, or make the use by such traffic conditioned upon the payment of certain fees. Packard v. Banton, 264 U. S. 140, 44 S. Ct. 257, 68 L. Ed. 596. And it seems now definitely settled that the state may, in the absence of national legislation upon the subject, rightfully prescribe uniform regulations necessary for public safety, and impose a graduated license fee upon motor vehicles moving in intrastate or interstate commerce upon its highways. Kane v. New Jersey, 242 U. S. 160, 167, 37 S. Ct. 30, 61 L. Ed. 222; Michigan Commission v. Duke, 266 U. S. 570, 45 S. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105; Interstate Motor Transit Co. v. Kuykendall (D. C.) 284 F. 882.

The Supreme Court of the state has held that the Legislature has full power to regulate or prohibit the use of public highways as a place of business by one who is a common carrier for hire. Smallwood v. Jeter, 42 Idaho, 169, 244 P. 149. This law merely imposes regulations upon all who use the highways for commercial purposes and gain, and is applicable alike to all who come within the statutory definition of an auto transportation company. The statute does not in terms or by implication affect the status of the plaintiff, even if he is a private carrier. It rests upon the fact that all who use the highways with their motor vehicles for gain or reward shall contribute to the upkeep of the highways necessary for their use. Clearly the plaintiff comes under this provision as "an auto transportation company," and under such conditions the act does not fall under the Fourteenth Amendment to the Constitution, as its adoption was within the police power of the state.

[5] The assertion that, although it be conceded that the power existed in the state Legislature to absolutely control the use of the highways, the particular statute in question is nevertheless void when applied to plaintiff's business, because he is not a common carrier, and therefore not subject to the requirements of the law, which could only apply to common carriers, requires an analysis of the facts as disclosed by the bill. The nature of the business conducted by the plaintiff, and the manner in which he operates his auto trucks upon the public highways for hire, establishes the fact that he is willing to transport property offered to and from any place for all customers who are willing to make a contract and pay the charge fixed by him. His trucks are not operated in the transportation of his own property; such as the merchants or lumbermen, who sell and deliver their goods and lumber to purchasers, but in the transportation, for any one who pays therefor, of the property of any one to any place. He thereby, under such conditions, elects to act as a common carrier, and becomes subject to the state's control, and whenever it appears that he is passing as a private carrier, when in reality he is a common carrier, it should so be declared, and his operations regulated accordingly. On similar facts it was held in Smitherman & McDonald v. Mansfield Hardwood Co. (D. C.) 6 F.(2d) 29, Producers' Transit Co. v. Railroad Commissioners, 251 U. S. 228, 40 S. Ct. 131, 64 L. Ed. 239, and Frost v. Railroad Commission, 271 U. S. 583, 46 S. Ct. 605, 70 L. Ed. 1101, 47 A. L. R. 457, that the carrier was acting in the capacity of a common carrier and subject to regulation by the state.
[6, 7] It will thus be seen that the plaintiff holds himself out to the public and transports upon the highways for compensation all property for any one, and by so doing he becomes a common carrier, and cannot escape liability as such by insisting upon a private contract with the shippers, and securing at the same time all the privileges afforded common carriers, without assuming any of their obligations or duties. A common carrier is "one who, by virtue of his calling and as a regular business, undertakes to transport persons or commodities from place to place, offering his services to such as may choose to employ him and pay his charges." McCoy et al. v. Pacific Spruce Corporation (C. C. A.) 1 F.(2d) 853; 10 C. J. 39. While a private carrier is "one who, without being engaged in the business of carrying as a public employment, undertakes to deliver goods in a particular case for hire or reward." 10 C. J. 38; Michigan Commission v. Duke, 266 U. S. 570, 45 S. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105; Producers' Transp. Line v. Railroad Commissioners, 251 U. S. 228, 40 S. Ct. 131, 64 L. Ed. 239.

It then being clear that, when plaintiff undertakes for hire to transport upon the public highways of the state property for all who choose to employ him, he engages in the business of carrying and delivering commodities as a public employment, and is making the highways his place of business by using them as a common carrier. He is exercising nothing more than a privilege, which may be granted under regulations or withheld by the state, without violating either the due process or equal protection clauses of the Constitution. Under such conditions, the Supreme Court of the state has further held that the act of the Legislature of 1925, regulating auto transportation companies, should be construed and applied to those holding themselves out to the public as being ready and willing to carry persons and property for hire. Smallwood v. Jeter, 42 Idaho, 169, 187, 244 P. 149.

In the case of Michigan Commission v. Duke, supra, relied upon by plaintiff, the carrier was engaged solely in transportation, under three contracts, of automobile bodies from Detroit, Mich., to Toledo, Ohio, and it was held that he was a private carrier. The carrier did not hold himself out or offer to transport property for the public, as his operations were confined to the three contracts in existence when the statute was enacted. The case is therefore distinguishable from the present case, as we find here that the plaintiff's operations are not confined exclusively to transporting commodities under special contracts, but he stands ready and willing to serve the public generally.

[8] The plaintiff further urges that the act in question, in defining who are automobile transportation companies, places him under the provisions of sections 5 and 6 of article 11 of the Constitution of the state of Idaho, and that the provisions of both the act and the Constitution convert him from a private carrier into a common carrier. A moment's glance at the constitutional provision clearly establishes that it was never intended by the makers of the Constitution to apply to any other kind of transportation than railroad companies and to rail transportation. By section 5 it is provided that "any association or corporation organized for the purpose shall have the right to construct and operate a railroad," etc.; and in section 6 it is stated, among other things, that "no railroad, express, or transportation company, nor any lessee, manager, or other employee thereof, shall give any preference to any individual, association or corporation, in furnishing cars or motive power. * * * "

[9] It is further claimed and strenuously insisted upon by the plaintiff that the act of Congress, relating to the appropriation of funds for the construction of highways and generally known as "government aid," wherein it is provided that highways shall be free from "tolls," withholds from the state the power to prescribe regulations for their use. This question has been decided adversely to plaintiff's contention by both the Supreme Court of the state and of the United States. In referring to the state law, the Supreme Court of the state held that "the 5 per cent. tax levied by the act is not a 'toll.' Its levy is not in violation of 'the Acts of November 9, 1921 (1921 Supp. Fed. Stats. Ann. 95 [23 USCA § 1 et seq.]), and of July 11, 1916 (1918 Supp. Fed. Stats. Ann. 639 [Comp. St. §§ 7477a–7477i, 5150a]), forbidding tolls on federal aid roads.' It is a license tax, laid not upon the vehicle, but upon the privilege of using the highways for business purposes." Smallwood v. Jeter, supra. In the case of Morris et al. v. Duby et al., 274 U. S. 135, 47 S. Ct. 548, 71 L. Ed. 966, recently decided by the Supreme Court of the United States, it was held that a regulation relative to a license fee of motor vehicles, imposed by the state statute for the use of the highways for hire, has no relation to the tolls inhibited by the act of Congress. The court said:

"An examination of the acts of Congress discloses no provision, express or implied, by which there is withheld from the state its ordinary police power to conserve the highways in the interest of the public and to prescribe such reasonable regulations for their use as may be wise to prevent injury and damage to them. In the absence of national legislation especially covering the subject of interstate commerce, the state may rightly prescribe uniform regulations adapted to promote safety upon its highways and the conservation of their use, applicable alike to vehicles moving in interstate commerce and those of its own citizens. Hendrick v. Maryland, 235 U. S. 610, 622, 35 S. Ct. 140, 59 L. Ed. 385, et seq.; Kane v. New Jersey, 242 U. S. 160, 167, 37 S. Ct. 30, 61 L. Ed. 222." Martine et al. v. Kozer (D. C.) 11 F.(2d) 645; Anthony et al. v. Kozer (D. C.) 11 F. (2d) 641.

Thus we see that the license fee or privilege tax imposed by the statute is not a "toll" of any kind within the meaning of the act of Congress, and therefore the state legislation is not void.

The motion to dismiss will be sustained.