STATE OF CONNECTICUT *v.* ANONYMOUS (1980–8)*

APPELLATE SESSION OF THE SUPERIOR COURT

* Thus entitled, in view of General Statutes § 54-142a.

552

SHEA, J. The trial court found the defendant guilty of violating § 14-137-1 of the regulations of the motor vehicle commissioner, which prohibits the installation or use of a radar detection device in any motor vehicle being operated upon a Connecticut highway. In this appeal the defendant claims (1) that his request for a jury trial was improperly denied; (2) that the regulation itself is invalid as an invasion of a domain preempted by the Federal Communications Act, as an undue burden on interstate commerce, as a promulgation under a standardless delegation of legislative power, and as a criminal enactment too vague for the guidance of the public; and (3) that his radar detection device was erroneously ordered to be forfeited. Although our resolution of the jury trial issue will necessitate a new trial, we shall consider the other issues raised because they would probably arise upon a retrial.

Despite the absence of a finding,[1] memorandum or other articulation of the factual basis of the decision, we are able to consider the issues raised because the briefs indicate that there is no dispute

[1] The trial judge died while the appeal was pending without filing a finding. Practice Book, 1978, § 3060B, which dispenses with the finding requirement but requires the court to "state its decision on the issues in the case and, if there are factual issues, the factual basis of its decision," is applicable. Practice Book, 1978, § 3166.

concerning any significant facts. See Practice Book, 1978, § 3164. On October 18, 1977, at 3:30 p.m., a police officer observed the defendant driving a motor vehicle on a highway in Windsor with a radar detector visible through the windshield. He observed a white light on the device go on as the vehicle passed his car. After he learned that another police officer was operating a radar unit in the area, he stopped the defendant's car. While the car was stopped, the device inside the windshield emitted an audible tone and illuminated its signal light again as another police car operating a radar unit approached the scene. A summons was issued to the defendant and the device, a book entitled "Fuzzbuster Police Radar Monitor Operations and Maintenance Manual," and a cardboard box labeled "Fuzzbuster Two" were seized. At the trial an expert witness testified that the item taken from inside the windshield of the defendant's car was a device for detecting the presence of radar signals and explained its operation. The defendant presented no evidence.

## I

General Statutes § 51-239b provides for the right of jury trial in any criminal action except where the maximum penalty is a fine of ninety-nine dollars or a sentence of thirty days, or both. Since the maximum penalty for a violation of § 14-137 (a) is a fine of one hundred dollars, as provided by General Statutes § 14-164, it is clear that the defendant had the right to a jury trial of the charge against him. Section 51-239b requires that in criminal proceedings the judge advise the accused of his right to trial by jury at the time he is put to plea. In this case the defendant initially entered a plea of not guilty in writing on October 31, 1977, without an appearance in court. On November 11, 1977, he appeared in court without counsel and the case was

continued for trial to December 9, 1977. Counsel filed an appearance for the defendant on November 22, 1977, and also a motion for a bill of particulars. A motion for a jury trial was filed on December 7, 1977. It was not brought to the attention of the trial court until December 9, 1977, when the trial was scheduled to begin. The court denied the motion because it was untimely and because a postponement would inconvenience the witnesses for the state.

The record does not indicate that the court at any time advised the defendant of his right to a jury trial. This oversight seems to have occurred because the defendant entered his plea without an arraignment in court. The provision of § 51-239b that a defendant who does not claim a jury trial at the time he is put to plea is deemed to have waived his right to such a trial is not applicable because the statute contemplates that the defendant would be advised of his right to a jury at that time. Practice Book, 1978, § 645 requires that inquiry be made at the time a not guilty plea is entered to determine whether a defendant elects a trial by the court or by the jury. Practice Book, 1978, § 839 provides that, if the defendant at that time elects a trial by the court, the judge must then advise him of his right to a jury trial. The record does not indicate that these provisions were followed in this case.

It has frequently been held that a waiver of a fundamental constitutional right, such as a right of jury trial stemming from a constitutional guarantee, cannot be presumed from a silent record. See *Boykin* v. *Alabama,* 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969) ; *State* v. *Marion,* 175 Conn. 211, 218, 397 A.2d 533 (1978).

Where the right of jury trial is constitutional in origin, compliance with the provisions of the statute

and the Practice Book is mandatory. Where the right is statutory, the defendant may be deemed to have waived it by failing to bring the matter to the attention of the trial court seasonably. Assuming that the defendant would have only a statutory right of jury trial on the charge in this case, we find an insufficient basis for the conclusion of the trial court that the defendant failed to assert his right seasonably. No waiver can be found in the conduct of the defendant before he was represented by counsel, since he had never been advised of his right of jury trial. Although counsel appeared for him more than two weeks before trial, the delay in filing the claim for a jury trial until two days before the scheduled trial date was not so unreasonable as to constitute a waiver. There was sufficient time to alert the prosecutor to the fact that a postponement might be necessary so that the witnesses could be notified. The court did err in denying the motion[2] of the defendant for a jury trial.

## II

The various grounds upon which the regulation concerning radar detection devices is claimed to be invalid were raised in a motion to dismiss which was denied by the trial court.

The question of whether the Federal Communications Act has preempted the regulation of radar

[2] General Statutes § 51-239b allows a defendant, who has failed to assert his right of jury trial after being advised of it by the trial court, to move for such a trial within ten days after judgment. The record does not indicate that any such motion was made. The state has not attributed any significance in this appeal to the failure of the defendant to have availed himself of this provision. Since the trial court had never advised the defendant of his right to a jury trial and since his request therefor was distinctly raised before trial and unequivocally denied, we also shall not insist upon the performance of an exercise in futility to enable the defendant to preserve this issue.

detection devices by the states is of fairly recent vintage. In the only two reported cases dealing with the issue which have been brought to our attention, the state regulations have been upheld. *People* v. *Gilbert,* 88 Mich. App. 764, 773, 279 N.W.2d 546 (1979) ; *Crenshaw* v. *Commonwealth,* 219 Va. 38, 245 S.E.2d 243, 246 (1978).

Although the language of the Federal Communications Act may be broad enough to allow federal regulation of the use of radar detectors, it is clear that no such regulation has been attempted. "Whether preemption has in fact occurred depends on whether the federal authority has, in fact, regulated the area and not on whether it has the power to do so." *Connecticut Television, Inc.* v. *Public Utilities Commission,* 159 Conn. 317, 337, 269 A.2d 276 (1970). The federal communications commission, in the exercise of its control over the use of radio frequencies, has allocated certain radar frequencies for use by the police. 47 C.F.R. §§ 2.101 et seq. and 90.19 (1979). This circumstance led the court in *Crenshaw* v. *Commonwealth,* supra, to view the state prohibition of radar detectors as complementing rather than conflicting with the federal regulatory function by protecting the effectiveness of essential police radio communication. In any event, in the absence of some federal regulatory action, we perceive no conflict between the regulation before us and the policy of the Federal Communications Act. See *Connecticut Television, Inc.* v. *Public Utilities Commission,* supra, 338–40. Accordingly, we reject the claim of federal preemption raised by the defendant.

The claim that § 14-137-1 constitutes an undue burden on interstate commerce is unsupported by anything in the record to indicate that the defendant, who resides in Bloomfield and was arrested in

Windsor, both towns within this state, was traveling to some other state at the time he was stopped. In any event, traffic regulations reasonably related to the promotion of safety on the highways and which have no discriminatory purpose or effect upon interstate traffic have uniformly been upheld. *South Carolina State Highway Department* v. *Barnwell Bros.,* 303 U.S. 177, 187, 58 S. Ct. 510, 82 L. Ed. 734 (1938); *Morris* v. *Duby,* 274 U.S. 135, 143, 47 S. Ct. 548, 71 L. Ed. 966 (1927). Section 14-137-1 has been construed to prohibit the installation or use of a radar detector in a vehicle being operated upon a highway within this state, but not the mere possession of such a device in such a vehicle. *State* v. *Anonymous (1979–3),* 35 Conn. Sup. 659, 406 A.2d 6. The burden of complying with the regulation imposed upon an interstate traveler whose vehicle contains such a device upon entering Connecticut is not so onerous that it outweighs the interest of the state in insuring the effectiveness of its speeding law enforcement program which the regulation is designed to protect. We can see no infringement upon the national interest in maintaining a free flow of interstate traffic sufficient to warrant invalidation of this regulation as an undue burden upon interstate commerce.

General Statutes § 14-137 (a), the statutory authority for promulgation of regulation § 14-137-1 by the commissioner, does not constitute an invalid delegation of legislative power because of the lack of adequate standards. Nothing which the defendant has presented in this appeal has persuaded us otherwise. With respect to the regulation involved here, the statute provides only that the commissioner may "limit the use of any device or accessory in any way which appears to him to be required for safety . . . ." The discretion of the commissioner is adequately circumscribed by the requirement, as

we construe the statute, that any regulation adopted would have to bear a reasonable relationship to the public safety, as does § 14-137-1. This standard identifies the considerations involved in adopting a regulation sufficient for the guidance of the commissioner and for the purpose of judicial review. *Forest Construction Co.* v. *Planning & Zoning Commission,* 155 Conn. 669, 679–80, 236 A.2d 917 (1967); *State* v. *Stoddard,* 126 Conn. 623, 628, 13 A.2d 586 (1940).

The defendant has raised a number of questions regarding the interpretation of § 14-137-1 in support of his claim that the regulation itself is too vague to pass muster as a criminal enactment. "That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law." *Connally* v. *General Construction Co.,* 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926). Where first amendment freedoms are not involved, the constitutionality of a provision being attacked as void for vagueness is determined by its applicability to the facts of the particular case. *United States* v. *Powell,* 423 U.S. 87, 92, 96 S. Ct. 316, 46 L. Ed. 2d 228 (1975); *State* v. *Pickering,* 180 Conn. 54, 57, 428 A.2d 322 (1980). The question of whether the regulation would apply to an instrument designed principally for other purposes, but which might also be used to give advance information to a motorist of the presence of a police radar unit, such as a CB radio, is not raised in this case because nothing in the evidence suggests that the device in the defendant's car was designed or being used for any other purpose. Similarly, we are not concerned with the precise meaning of

"installed" as used in the regulation, whether the device must be affixed in some manner to the vehicle, because the evidence clearly supports a conviction based upon the "use" of the device. "[T]hat a statutory provision may be of questionable applicability in speculative situations is usually immaterial if the challenged provision applies to the conduct of the defendant in the case at issue." *State* v. *Pickering,* supra, 58. Although the judicial gloss which has been applied to § 14-137-1 by this court; *State* v. *Anonymous (1979–3),* supra; postdated the deed for which the defendant was summoned, and, therefore, cannot be relied upon for clarification of the regulation, its unembossed language as applied to the facts in this case is clear and does provide fair warning to the public of the conduct prohibited. *State* v. *Pickering,* supra, 61.

## III

The necessity of a new trial in this case, because of the denial of the defendant's request for a jury trial, would require also that the order of the trial court forfeiting the defendant's radar detector to the state be nullified. We nevertheless discuss the propriety of the order since the issue would normally arise upon the retrial.

The order appears to have been entered under the authority of General Statutes § 54-33g which establishes an in rem proceeding for property seized under a search warrant to be adjudicated as a nuisance and disposed of accordingly. The statute was inapplicable to the seizure in this case because no search warrant was used.

The state relies upon a portion of General Statutes § 54-36a (c) which provides for returning to the owner any property seized in connection with a

criminal proceeding "unless the court finds that such property shall be forfeited or is contraband or a controlled substance . . . ." "Contraband" is defined by the statute as "any property, the possession of which is prohibited by any provision of the General Statutes." General Statutes § 54-36a (a). The mere possession of a radar detector is not prohibited by § 14-137-1 or by any other provision. *State* v. *Anonymous (1979–3)*, supra.

The state claims that § 54-36a (c) authorizes the forfeiture of any object which has been used as an instrumentality in the commission of a crime. We need not decide that issue at this time because a violation of § 14-137-1 is not a crime. "The term 'crime' comprises felonies and misdemeanors." General Statutes § 53a-24. Since the penalty for violating the regulation is limited to a fine; General Statutes § 14-164; such an offense is not a felony or a misdemeanor, both of which require imprisonment as a possible penalty. General Statutes §§ 53a-25, 53a-26. "An offense, for which the only sentence authorized is a fine, is a violation unless expressly designated an infraction." General Statutes § 53a-27 (a). This definition is expressly made to apply to offenses like the one before us, not included in the penal code but contained in other chapters of the general statutes. General Statutes § 53a-27 (b).

It is clear that the radar detector taken from the defendant cannot be the subject of forfeiture on the ground it had been used in violating § 14-137-1 any more than such a penalty could be imposed with respect to his car, which was similarly used. "Conviction of a violation shall not give rise to any disability or legal disadvantage based on conviction of a criminal offense." General Statutes § 53a-24 (a). There is no basis for the forfeiture ordered by the trial court.

There is error, the judgment of guilty is set aside and the order of forfeiture is vacated, and the case is remanded for a new trial with direction to grant the defendant's request for a jury trial.

In this opinion A. ARMENTANO and BIELUCH, Js., concurred.